UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZULMA GUITY,

                              Plaintiff,

              -v-

UNITED STATES OF AMERICA,

                              Defendant.

26 Civ. 171 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This damages action against the United States is brought, under admiralty law, by a

sailor, Zulma Guity, who claims she suffered serious injuries while disembarking from a ship

owned by the U.S. Navy that was then in international waters.  Pending now is a motion by the

United States ("the Government") to transfer venue to the Northern District of Georgia

("NDGA") under 28 U.S.C. §1406(a) or, alternatively, for dismissal under Federal Rule of Civil

Procedure 12(b)(3).  For the following reasons, the Court grants the motion to transfer.

I.      Background

        A.      Guity's Complaint

Guity's Complaint alleges as follows.  She served as a crewmember of the U.S. Naval

Ship Pililaau ("Pililaau").  Dkt. 1 ("Compl.") ¶ 8.  The Pililaau is owned and controlled by the

United States, under the Navy's Military Sealift Command.  *Id.* ¶ 5.  The United States operates

the Pililaau through Patriot Contract Services, LLC ("Patriot"), a private shipping contractor.  *Id.*

Patriot was the Pililaau's "ship manager and vessel operator," and hired its crew.  *Id.*

On October 4, 2025, while the Pililaau was in international waters,[1] Guity, while using a ladder to disembark from the Pililaau to a launch boat, fell "at least 20 feet" onto the vessel below. *Id*. ¶ 6. She suffered injuries including to her face, jaw, head, knees, and back. *Id*. She claims that, as a result, she cannot presently work or do "many activities," and will be limited in her future employment. *Id*. ¶ 9. She claims lost past and future earnings, and that she will incur future medical expenses. *Id*. ¶¶ 10–11, 14.

The Complaint brings three claims: for (1) negligence, under the Jones Act, 46 U.S.C. § 30104; (2) unseaworthiness under general maritime law, including based on violations of 33 C.F.R. § 42.15-75, which required the United States to provide satisfactory means of egress to and from the Pililaau; and (3) maintenance and cure. *Id*. ¶¶ 2, 23. It seeks compensatory damages, and attorneys' fees and costs. *Id*. ¶ 30. Relevant here, the Complaint pleads that, as of the filing date, the Pililaau was located in international waters. *Id*. ¶ 5.

## B.    Procedural History

On January 8, 2026, Guity filed the Complaint. Dkt. 1. On March 16, 2026, the Government moved to transfer the case to the NDGA, or alternatively to dismiss it, Dkt. 14 ("Mem."), attaching declarations and exhibits, Dkts. 15 ("Zonghetti Decl."), 16 ("Monroe Pizarras Decl."), 17 ("Gillihan Decl."). On April 6, 2026, Guity opposed, Dkt. 21 ("Opp'n"), attaching a declaration and exhibits, Dkt. 22 ("Guity Decl."). On April 13, 2026, the Government replied, Dkt. 23 ("Reply"), attaching another declaration and exhibits, Dkt. 24 ("Gillihan Supp. Decl."). On June 15 and 16, 2026, respectively, the Government and Guity each filed a supplemental declaration and exhibit. Dkts. 27 ("Zonghetti Supp. Decl."), 28 ("Guity Supp. Decl.").

---

[1] Although this fact is not pled in the Complaint, the parties appear to agree that the Pililaau was in Diego Garcia, a naval outpost in the Indian Ocean.

**II.     Legal Standards Applicable to Motions Based on Improper Venue**

**A.     Rule 12(b)(3)**

Federal Rule of Civil Procedure 12(b)(3) governs motions to dismiss for improper venue. On such a motion, the Court accepts as true all factual allegations in the non-moving party's pleadings and draws all reasonable inferences in that party's favor. *See Blakely v. Lew,* No. 13 Civ. 2140, 2013 WL 6847102, at *1 (S.D.N.Y. Dec. 30, 2013). The Court may, however, also consider materials outside the pleadings, such as affidavits and other evidence submitted by the parties. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). The non-moving party bears the burden of showing that venue is proper in the district where the action was filed. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). Where an evidentiary hearing has not been held, "the plaintiff need only make a *prima facie* showing of venue." *Id.* (cleaned up). Where venue is found improper, the Court "shall dismiss, or if it be in the interests of justice, transfer the case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

**B.     The Public Vessels Act**

Under the Public Vessels Act ("PVA"), 46 U.S.C. § 31101 *et seq.*, an *in personam* admiralty action for harm caused by a United States vessel "shall be brought in the district court . . . for the district in which the vessel or cargo is found within the United States." 46 U.S.C. § 31104(a); *see also id.* § 31102. If the vessel or cargo is located outside U.S. territorial waters, however, the action shall be brought in the district "in which any plaintiff resides or has an office for the transaction of business." *Id.* § 31104(b)(1).[2]

---

[2] Where no plaintiff resides or has an office to transact business in the United States, venue is proper in any district. *Id.* § 31104(b)(2).

### III.    Discussion

It is undisputed that the Pililaau was outside U.S. territorial waters when the Complaint was filed.  *See* Compl. ¶ 5; Mem. at 5.  As a result, under the PVA, venue was proper in a district where Guity "reside[d] or ha[d] an office for the transaction of business," 46 U.S.C. § 31104(b)(1), "at the time the operative complaint [was] filed," *Keitt v. New York City*, 882 F. Supp. 2d 412, 459 n.44 (S.D.N.Y. 2011).

The Government argues that, as of when the Complaint was filed, Guity did not reside or have an office to transact business in this District.  Instead, it argues, she was a resident in the NDGA.  It therefore seeks transfer to the NDGA, or dismissal.  Mem. at 9–10.  Guity counters that she was then a resident of this District.  Opp'n at 6.  Both parties have submitted affidavits and documentary evidence in support, or ostensible support, of these positions.

Viewing this evidence as a whole, it lopsidedly demonstrates that, as of January 8, 2026, Guity resided in NDGA and not this District.  Specifically:

On March 27, 2025, in preparation to be dispatched to the Pililaau, Guity completed a U.S. Coast Guard form titled "Application for Medical Certificate" or "Form CG-719K." Gillihan Decl., Ex. A at 2.  In it, Guity listed her home address as "1687 Matt Springs Drive, Lawrenceville, GA 30045" (the "Lawrenceville address"), which is located in the NDGA.  *Id.* at 4.  Guity also listed her primary phone number as beginning "678"—an area code for phone subscribers in that district.  *Id.*  At the end of the form, she certified, "subject to prosecution under 18 [U.S.C.] § 1001," that all information she had provided was truthful.  *Id.* at 10.

In April 2025, to begin her assignment aboard the Pililaau, Guity flew out of Atlanta's Hartsfield-Jackson International Airport, the commercial airport closest to the Lawrenceville address, and located in the NDGA.  *Id.* ¶ 6; *Id.*, Ex. B at 2.

4

Shortly after the October 4, 2025 accident, Guity was airlifted to the Singapore General Hospital for emergency medical care.  Guity Decl. ¶ 2.  Between October 5 and 14, 2025, the Singapore General Hospital admitted Guity.  It listed the Lawrenceville address as hers.  *Id.*, Ex. 1 at 3.

After her hospital discharge, Guity confirmed, in multiple written communications with Patriot staff, that she resided at the Lawrenceville address.  On October 27, 2025, she sent an email to Patriot claims manager Michael Gillihan regarding her medical care.  In it, she stated: "[M]y home is in Georgia, I am here [in Georgia] because I have family and I have support from my family."  Gillihan Decl., Ex. C at 3.  On October 30, 2025, after Gillihan asked Guity by WhatsApp message: "Can you send me your current address for a check I need to send you?," Guity replied by providing the Lawrenceville address.  *Id.*, Ex. D at 1.  Gillihan further attests that he spoke with Guity by phone after the accident about her treatment and medical expenses. Gillihan Decl. ¶ 9.  During these discussions, he attests, Guity stated that she would temporarily stay with her parents in New York for medical treatment until her condition stabilized, but that she "needed to get back to her home in Georgia," where she resided with and cared for her children, and that she needed monetary compensation to continue paying the mortgage on that home.  *Id.*

In addition, the public assessor for the county encompassing the Lawrenceville address lists Guity as the "primary owner" of that property.  *Id.* ¶ 10.  The county's records reflect that Guity purchased the home on December 23, 2019, and that annual tax assessment notices were sent to Guity between 2022 and 2025.  *Id.*

In October 2025, Whitney Pizarras, an independent contractor for Patriot, who helps coordinate Patriot crewmembers' medical treatment, also spoke with Guity by phone.  Pizarras

Decl. ¶ 3.  Pizarras attests that, during these conversations, Guity stated that she resided in Georgia, not New York, and that she was temporarily staying with family in New York while recovering from her injuries.  *Id.*  And, between November 18 and December 10, 2025, Guity signed and deposited checks that Patriot had mailed, at her request, to the Lawrenceville address. Gillihan Supp. Decl. ¶¶ 3–4.

On May 16, 2026—some four months after the Complaint was filed—Guity was admitted to the emergency room at Northside Hospital in NDGA.  Zonghetti Supp. Decl. ¶ 2, Ex. 1 at 2–3.  Guity claims that, that day, she was "in Georgia visiting [her] daughter," and went to the emergency room due to pain from injuries she sustained in the accident.  Guity Supp. Decl. ¶ 2.  But Guity gave the hospital the Lawrenceville address, as reflected in the emergency room bill.  Zonghetti Supp. Decl. ¶ 2, Ex. 1 at 2–3.

Guity, for her part, has produced evidence ostensibly supporting her residence in this District.  Fairly evaluated, however, that evidence does not reflect such as of the date of the Complaint.

Several documents Guity submitted associate her with a Manhattan address, but these substantially predate January 2026.  Her "Merchant Mariner Credential" lists "90 Pitt Street, Apt. 7B, New York, NY 10002" (the "Manhattan address") as her "present address."  The document was issued, however, on December 28, 2022.  Guity Decl., Ex. 5.  Guity avers that, in 2023, she obtained a New York City identification card that also lists the Manhattan address, but by her own account, she obtained that card in 2023.  Guity Decl. ¶ 11.[3]  Guity also submitted an undated letter from the New York City Housing Authority, which states that, as of November 1,

---

[3] This card does not bear an issuance date.  Guity Decl., Ex. 7 at 1.

2023, Guity was "added to the family composition of Melinda Guity who resides at [the Manhattan address]."  Guity Decl. ¶ 10, Ex. 6 ("NYCHA letter") at 1.  These documents reflect, at most, that Guity had a Manhattan address several years before this lawsuit (and the accident).  But they are overtaken by the body of pre-accident documents from 2025, and Guity's written and oral statements after it, in which Guity repeatedly represented, to the Coast Guard and hospitals, that she was then residing at the Lawrenceville address.  These more recent statements do not mention a Manhattan address (or any residence other than in NDGA).[4]

In support of this venue, Guity separately notes that, since the accident, she has received ongoing dental and medical treatment in and near New York.  *See* Guity Decl. ¶¶ 4–5 (describing past and anticipated oral surgeries in Manhattan, and anticipated knee surgery in Fort Lee, New Jersey); Guity Supp. Decl. ¶¶ 5–6 (attesting that, after a May 16, 2026 emergency room visit in NDGA, Guity returned to New York for dental treatment, anticipated to last 17 months).  But, under longstanding case law under the PVA, a mariner's temporary stay, even if for sustained medical treatment, does not establish her residence.  *See, e.g.*, *Carroll v. United States*, 133 F.2d 690, 692–93 (2d Cir. 1943) (venue improper, where mariner was temporarily located in district for medical treatment); *Abbott v. United States*, 61 F. Supp. 989, 991–92 (S.D.N.Y. 1945) (same); *see also Amendola v. Cavallero*, No. 23 Civ. 10607, 2025 WL 81383, at *7 (S.D.N.Y. Jan. 13, 2025) (the "mere fact that an individual lived at his parents' home while receiving

---

[4] Guity has submitted four biweekly pay stubs from Patriot, which list the Manhattan address, and which correspond to pay dates between December 31, 2024 and October 15, 2025.  Guity Decl., Ex. 4.  Guity does not aver, however, when she supplied Patriot with the residence information on these pay stubs.  And they pre-date unequivocal representations by Guity to Patriot staff that she resided at the Lawrenceville address.  On October 30, 2025, for example, asked where a physical check should be mailed, Guity gave the Lawrenceville address as her "current address."  Gillihan Decl., Ex. D at 1.  Viewed in context, the pay stubs' listing of the Manhattan address appears to reflect outdated information that was not updated.

medical treatment does not, in itself, suffice to establish an intention to remain there" (cleaned up)); *Bevilaqua v. Bernstein*, 642 F. Supp. 1072, 1074 (S.D.N.Y. 1986) (similar); *In re Escallón*, 323 F. Supp. 3d 552, 557–58 (S.D.N.Y. 2018) (no residency in this District, notwithstanding that plaintiff owned and periodically stayed at Manhattan address, and certain documents listed that address as his).

In light of the above, little weight is due Guity's conclusory statements in her declaration to the effect that she resides in this District.  She states: "I live in an apartment at [the Manhattan address] with my family"; "I do not live [at the Lawrenceville address]"; and "I plan to remain in New York permanently."  Guity Decl. ¶¶ 3, 6.  A party's "self-serving declarations regarding [her] own domicile, particularly with regard to an intent to retain or establish one, are subject to judicial skepticism and accorded little weight when they are in conflict with the facts or a party's actual conduct."  *Richard & Anne Rubin Fam. Tr. v. Attention to Detail Constr. Corp.*, No. 23 Civ. 9390, 2025 WL 964108, at *3 (E.D.N.Y. Mar. 31, 2025); *see also Hatfill v. Foster*, 415 F. Supp. 2d 353, 365 (S.D.N.Y. 2006) (same).  Here, the substantial objective evidence above, including statements by Guity to her maritime employer and medical providers, contradict her claims.  *See, e.g.*, *Bogan v. Northwestern Mut. Life Ins. Co.*, 103 F. Supp. 2d 698, 700 (S.D.N.Y. 2000) ("when the place of actual residence is clear, it is typically unnecessary for the Court to inquire as to a party's intent to remain in the new state").

In sum, based on the objective documentary evidence and numerous contemporaneous statements by Guity, it is clear that she resided in the NDGA in January 2026 when she filed the Complaint—notwithstanding her temporary stay in Manhattan for dental and medical treatment, and historical documents bespeaking an earlier Manhattan address.  Guity has thus not made a

*prima facie* showing that venue is proper in this District.[5]  Because venue in this District is improper, the Court will transfer venue to NDGA.  *See, e.g.*, *Bogan*, 103 F. Supp. 2d at 700–01 & n.1 (S.D.N.Y 2000) (finding lack of residency where documents offered by plaintiff to support such "precede[d] the date the complaint was filed . . . often by more than a year"); *LS Parry, Inc v. Tepeyac, LLC*, No. 18 Civ. 11808, 2020 WL 5026589, at *5 (S.D.N.Y. Aug. 25, 2020) (transferring case without factual hearing, where plaintiff did not make *prima facie* showing of proper venue); *Shepperson v. Greenwood Motor Lines, Inc.*, No. 23 Civ. 9097, 2024 WL 967438, at *4 (S.D.N.Y. Mar. 6, 2024) (same); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 81 (2d Cir. 1978) (same).[6]

---

[5] *See, e.g.*, *Carroll*, 133 F. 2d at 692–93; *Abbott*, 61 F. Supp. at 991–92; *Amendola*, 2025 WL 81383, at *7; *Bevilaqua*, 642 F. Supp. at 1074; *In re Escallon*, 323 F. Supp. 3d at 557; *Che v. Edlow*, No. 24 Civ. 2793, 2025 WL 2695283, at *3–5 (S.D.N.Y. Sept. 22, 2025).

[6] Section 1406(a) authorizes the Court, on a showing of improper venue, either to dismiss the case or, in the interests of justice, to "transfer the case to any district . . . in which it could have been brought."  28 U.S.C. § 1406(a).  The decision whether to transfer or dismiss is "within the sound discretion of the district court."  *Minette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).  Here, it is clear that venue is proper in the NDGA, such that Guity could have filed this lawsuit there, and she has requested transfer, not dismissal, in the event of a finding that venue here is improper.  Opp'n at 3.  Transfer is thus in the interests of justice.  *See, e.g.*, *Certain Underwriters at Lloyd's v. Allied Professionals Ins. Co.*, No. 20 Civ. 8572, 2022 WL 4579283, at *6 (S.D.N.Y. Sept. 28, 2022) (transferring case, where party requested transfer in the event venue was found improper).

## CONCLUSION

For the above reasons, the Court grants the Government's motion to transfer venue. The Clerk of Court is respectfully directed to terminate the pending motion at docket 14, and to transfer this case to the Northern District of Georgia.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: July 1, 2026
        New York, New York